UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR MACHADO,<br><br>    Plaintiff,<br><br>v.<br><br>A. BUSTAMANTE AND K. YOUNG,<br><br>    Defendants. | Case No. 2:18-cv-02943-JDP (PC)<br><br>ORDER THAT THE CLERK OF COURT ASSIGN A DISTRICT JUDGE TO RULE ON THESE FINDINGS AND RECOMMENDATIONS<br><br>FINDINGS AND RECOMMENDATIONS THAT:<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>ECF No. 31<br><br>PLAINTIFF'S MOTIONS FOR IMMEDIATE TRANSFER BE DENIED AS MOOT<br><br>ECF No. 40<br><br>OBJECTIONS DUE IN 14 DAYS |

    Plaintiff Oscar Machado alleges that he assisted another inmate in filing a lawsuit against correctional officers at Mule Creek State Prison. In retaliation and in violation of his First Amendment rights, he claims that officers A. Bustamante and K. Young searched and ransacked his cell. Defendants have moved for summary judgment and raise three arguments in support. First, they argue that plaintiff knowingly omitted assets from his application to proceed *in forma*

1

*pauperis*. They argue that the proper remedy for such an omission is dismissal with prejudice. Second and in the alternative, they argue that defendant Young is entitled to summary judgment because the evidence shows that he did not retaliate against plaintiff. Third, they argue that Young is protected by qualified immunity. None of these arguments is persuasive, and I recommend that defendants' motion for summary judgment be denied. I also recommend that plaintiff's motion for transfer, ECF No. 40, be denied as moot.

**Motion for Transfer**

On December 14, 2020, plaintiff filed a motion asking that the court order him transferred back to Mule Creek State Prison ("MCSP") from the Los Angeles County Jail. ECF No. 40. Before I addressed the motion, plaintiff was sent back to MCSP. ECF No. 43. Accordingly, the motion should be denied as moot.

**Motion for Summary Judgment**

**A.    Legal Standards**

**1.    Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court can consider other materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### 2. First Amendment Retaliation Claims

The First Amendment guarantees prisoners the right to file prison grievances and to bring civil rights suits in court. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A prison official who retaliates against an inmate for these protected activities violates the First Amendment. *See, e.g.*, *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). To succeed on a First Amendment retaliation claim, a plaintiff must show that: (1) a state actor took an adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *See Rhodes*, 408 F.3d at 567-68.

### B. Background

In 2016, an inmate named Kahaku asked plaintiff to help him bring First Amendment retaliation claims against several officials at MCSP. ECF No. 1 at 4-5. Kahaku's lawsuit was filed in 2016 and settled in early 2018. *Id.* at 5. Plaintiff alleges that defendant Bustamante learned of the settlement at some time in February 2018 and then began harassing plaintiff and Kahaku. *Id.* at 5-6. That harassment culminated when, on February 17, 2018, defendants searched and trashed the cell shared by plaintiff and Kahaku. *Id.* at 6. Plaintiff approached Bustamante afterwards and asked why the search had been conducted. *Id.* The latter referenced the settlement and stated "yeah, you guys may have been able to collect from us but get used to this . . . [s]omebody wanted us to pay you guys a visit to clean your house." *Id.*

### C. Analysis

#### 1. False Allegation of Poverty

Defendants argue that this case should be dismissed because plaintiff misrepresented his assets on his application to proceed *in forma pauperis*. Specifically, they claim that he omitted two categories of assets: those held by his wife, and funds transferred to his inmate account from the families of other prisoners who, defendants claim, are seeking to avoid paying restitution.

4

ECF No. 31-2 at 4.  Under 28 U.S.C. § 1915(e)(2)(A), courts "shall dismiss the case at any time if [it] determines that the allegation of poverty is untrue."  The Ninth Circuit has held that dismissal under this provision is appropriate only where there is a showing of bad faith.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1236 n.8 (9th Cir. 2015) ("To dismiss Escobedo's complaint pursuant to § 1915(e)(2), a showing of bad faith is required, not merely inaccuracy.").  I am not persuaded that plaintiff's omissions were made in bad faith, and I decline to recommend that this action be dismissed under § 1915(e)(2).

The assets held by plaintiff's wife are modest.  Defendants describe them as: (1) a bi-weekly salary of $2,287 dollars; (2) a vehicle valued at $6,200 dollars; and (3) $159 in a checking or savings account.[1]  ECF No. 31-2 at 4.  Plaintiff and his wife have been married since 1992 and she regularly sends him money.  *Id.*  Defendants argue that plaintiff's omission of these assets must have been made in bad faith because he is an experienced litigator who "is familiar with the need for truthful and complete pleadings."  ECF No. 42 at 4.  But that argument can just as easily be turned on its head: If plaintiff is knowledgeable about the mechanics of litigation, it is unlikely that he would have tried to hide assets that were already disclosed in another action, especially when the omitted assets were relatively small and thus unlikely to disrupt a finding of poverty.  Finally, although the Machados have a long-standing marriage, it probably should not be ignored that plaintiff is a prisoner and lacks ready access to his wife's assets.  A plaintiff, even a savvy one, could conceivably overlook the need to list assets not at his ready disposal.

I am also unpersuaded that plaintiff's acceptance of "JPAY" transfers from the families of other inmates shows that his allegation of poverty was false.  The allegation that plaintiff has used his inmate account to help others avoid restitution fees is a serious one, but it is not at issue in this case.  As plaintiff argues in his opposition, he appears to have understood that all assets in his prisoner trust fund account would be shown in the separately filed trust fund account statement.

---

[1] These figures come from an *in forma pauperis* application filed by Mrs. Machado in a separate case.  *See Juanita Machado v. Lizarraga, et al.*, No. 2:17-cv-02430-TLN-CKD (PC), ECF No. 2.  Defendants ask that I take judicial notice of this document, but I find it unnecessary to do so.  For the purposes of this motion, I will accept the figures as true.  They do not alter my analysis.

1  ECF No. 41 at 15.  Such a belief would have been reasonable, and the record does not otherwise
2  show that plaintiff acted in bad faith in omitting previous "JPAY" transfers from his application.

### 2. Defendant K. Young

In the alternative, defendant Young raises two separate arguments for summary judgment. First, he broadly argues that the undisputed facts show that he did not retaliate against plaintiff. He contends that he did not take adverse action against plaintiff because he did not personally search plaintiff's cell.  ECF No. 31-2 at 9.  Instead, he only stood watch near the outside of the cell to ensure Bustamante's safety.  *Id.*  Young also argues that there is no evidence that he had any intent to retaliate against plaintiff for his protected conduct, and he contends that standing guard outside plaintiff's cell while it was searched served a legitimate correctional goal.  *Id.*

This argument should be rejected because the relevant facts are in dispute.  Plaintiff's opposition includes a declaration from Javier Zubiate, an inmate who claims to have observed Young enter plaintiff's cell alongside defendant Bustamante to conduct the search.  ECF No. 41 at 20.  This testimony is at odds with Young's claim that he was not present when Bustamante began the cell search.  ECF No. 31-4 at 5-6.  Zubiate also states that Young was not regularly assigned to plaintiff's housing unit.  ECF No. 41 at 20.  This calls into doubt Young's claim that he came upon Bustamante conducting the cell search and undertook to help him by happenstance.  ECF No. 31-4 at 5-6.  And although Young claims to have had no knowledge of plaintiff's legal filings prior to the cell search, plaintiff disputes that.  He points to the statement allegedly made by Bustamante after the search, that "someone wanted us to pay you guys a visit," and argues that the "us" implicates Young in the retaliatory search.  Finally, Young's argument that his presence necessarily served a legitimate penological purpose cuts against precedent.  If Young understood Bustamante's search to be motivated by retaliation, his assistance was illegitimate.  *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.").  Based on the record, a reasonable finder of fact could conclude that Young's involvement in the search was retaliatory.

Second, Young argues that he is entitled qualified immunity because he did not violate plaintiff's constitutional rights and, even if he did, a reasonable officer would not have known that safeguarding an officer conducting a cell search amounted to a violation. ECF No. 31-2 at 10.

I also reject this argument. The initial inquiry in evaluating a claim of qualified immunity is whether a plaintiff's allegations, taken as true, establish that the defendant violated his constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, the alleged facts show that Young violated plaintiff's constitutional rights by participating in a search that was meant to punish him for engaging in protected conduct. Since the first inquiry is answered in the affirmative, I must determine whether the right Young violated was clearly established. *Id.* Put differently, would a reasonable officer have understood that searching a prisoner's cell to punish him for taking legal action was unlawful? *Id.* at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). The answer must be yes. A prisoner's right to engage in civil rights litigation without fear of reprisal from prison officials is not new. *See Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985).

Accordingly, it is ORDERED that the Clerk of Court assign a district judge to rule on these findings and recommendations.

Further, it is RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 31, be denied.

2. Plaintiff's motion for immediate transfer, ECF No. 40, be denied as moot.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the

7

specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __August 17, 2021__

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE